## Cole and Another *v.* Bansemer and Others.

Usury.—Junior Incumbrancer.—A junior incumbrancer, where the debtor is insolvent, may set up the defense of usury to a prior incumbrance, without the consent of the debtor, for the purpose of protecting the fund out of which the liens are to be satisfied.

Plea of Usury.—It is not necessary in a plea of usury, under the present statute, to aver that the unlawful interest was corruptly reserved.

APPEAL from the *Tippecanoe* Common Pleas.

Frazer, J.—This was a suit by *Bansemer, Bro. & Co.,* to foreclose a mortgage on real estate, executed by *James W. Cole. Richard Cole,* who held a prior mortgage, and certain judgment creditors, whose judgments were liens upon the real estate junior to the plaintiffs' mortgage, were made defendants, with the mortgagor. *Richard Cole* answered, and by cross-complaint prayed the foreclosure of his mortgage. *James W. Cole* answered, admitting the truth of the cross-complaint. The judgment creditors answered the cross-complaint, setting up their liens, alleging the insolvency of the mortgagor, and that the claim of *Richard Cole* was usurious, in reserving, on the face thereof, interest

at the rate of ten per cent. per annum, and praying that his recovery of interest might be limited to six per cent. per annum. The plaintiffs filed a similar answer to *Richard Cole's* cross-complaint, and demurrers by *Richard* and by *James W. Cole,* to these answers, were overruled. Issues of fact were then made, the trial of which resulted in giving *Richard* a judgment, computing interest at only six per cent. per annum.

The first and most important question presented is whether parties, other than the debtor, can, against his wishes, take any advantage of mere usury in a contract, to which they are not parties, for the purpose of so protecting the debtors' property, he being insolvent, as to enable them to make out of it liens held against it by them, junior to that alleged to be usurious.

Under the *English* statute of 12 *Ann,* chap. 16, which was highly penal, making void any contract tainted with usury, and imposing upon the lender, in addition, a forfeiture of treble the sum loaned, when unlawful interest was taken, "by means of any corrupt bargain," &c., it was held that the act was intended solely for the protection of the borrower, and that therefore he only, and those representing him, could set up the defense of usury. The same doctrine was held in various of our *American* states, under statutes against usury more or less penal in their character. This broad doctrine, even under such statutes, has been, in some states, relaxed in favor of subsequent incumbrancers and judgment creditors. *Post* v. *Dart,* 8 Paige, 639; *Dix* v. *Van Wyck,* 2 Hill, 522; *Union Bank* v. *Bell,* 14 Ohio St. 200. In this State, at one time, the older doctrine seemed to be settled as our law, and if it had not subsequently been thrown in doubt, we should now, probably, without re-examination, feel bound to adhere to it as a rule of property, upon the faith of which the public had based their business transactions. *Stephens* v. *Muir,* 8 Ind. 352; *Wright* v. *Bundy,* 11 *id.* 398; *Borum* v. *Fouts,* 15 *id.* 50. But in *Butler* v. *Myer,* 17 Ind. 77, this court, not overlooking what

had been previously held here, said, the question being in its path, that "creditors of the maker of an usurious instrument may" take advantage of the usury without his permission, as his representatives may do. Thus the question must be deemed an open one, in this State, to be determined upon its merits.

Our statutes against usury, since 1861, have not been penal, and a successful defense of usury involves now simply a failure to recover more than the principal sum, with interest at the rate of six per cent. per annum. The hardship and injustice of the defense is therefore, in a great measure, if not entirely, removed, and thus a strong reason for the strictness of the old rule has been swept away. The lender still recovers his debt, and as great a rate of interest as, in the judgment of the law, he ought to demand. His just rights, as the statute defines them, and as the prevailing sentiment of the community, which is embodied in the statute, would measure them, are fully secured to him. This done, there can be little if any wrong to him in allowing a junior incumbrancer of real estate, held by prior mortgage for a debt tainted with usury, to protect the fund in which he is interested for the payment of his debt, by making the defense. In a case where the whole fund must at any rate be exhausted, and the debtor is insolvent, why should it be at his option how it shall be apportioned among his creditors? Especially why should one creditor, at the will of the debtor, recover beyond what the statute in broad terms fixes as the limit of his claim? If it may be ten per cent. it may be fifty or one hundred, and thus a failing debtor might, by usurious contracts, incumber his whole estate and make it worthless to other creditors, whom he sought to postpone, retaining to himself, however, a means of protection, after thus forcing disadvantageous compromises upon them. Indeed it is worthy of inquiry whether it is a fair statement of the object of our present statute against usury, to say that it was intended solely for

Cole and Another *v.* Bansemer and Others.

the protection of the borrower, and whether the conclusion deduced therefrom, that therefore others than he shall not take advantage of it, is either logical or just. A debtor pays his obligations and performs his contracts for his own benefit, and yet anybody interested in the question of his liability may show such payment or performance. The fact is the courts were formerly impelled by a sense of justice to limit the operation of severe statutes against usury, and supported themselves in doing so by a course of reasoning which was exceedingly artificial, and sustained by but few analogies in the law. When the statute is so changed that justice no longer requires this, it is questionable whether the rule ought still to be adhered to. Without intimating a rule of decision for cases other than such as is now before us, we do not hesitate to say that it seems to us that the express letter of the statute furnishes alike the measure of the debtor's liability, and of the usurious creditor's lawful demand, viz: "the plaintiff shall recover only his principal, with six per cent. interest, and costs." Acts 1861, p. 139.

The remaining question is whether, in a plea of usury, under the existing laws of this State, it is necessary to aver that the unlawful interest was corruptly reserved.

In *Cohee* v. *Cooper*, 8 Blackf. 115, this averment was held to be necessary, upon the authority of 3 Chit. Pl. 966, and notes. The rule of pleading thus announced in Chitty and well supported by *English* cases, was correct under the statute (12 Ann, chap. 16) already cited. Owing to the severity of that enactment great strictness was required in a plea of usury, and an intention to violate the statute was held to be a necessary element of usury. It was, however, uniformly ruled that when, by mistake or miscalculation a greater rate of interest was reserved than was allowed by law, the debtor would be relieved from payment of the excess. Our statute, as already appears, has put upon this latter footing all contracts wherein a greater rate of interest than six per cent. per annum is reserved, and no forfeiture

or penalty is incurred.  There is therefore now no reason here for the allegation that the contract was corruptly made, and the rule of pleading requiring it must consequently be deemed to have ceased to exist.

The judgment is affirmed, with costs,

*J. M. La Rue*, for appellants.

*B. W. Langdon, H. W. Chase* and *J. A. Wilstach*, for appellees.